1
2
3
4  UNITED STATES DISTRICT COURT
5  EASTERN DISTRICT OF WASHINGTON
6
7  KRIS T. KNIGHT,                          No. 2:15-CV-00093-JTR

8            Plaintiff,                      ORDER GRANTING
9                                            DEFENDANT'S MOTION FOR
10           v.                              SUMMARY JUDGMENT
11  CAROLYN W. COLVIN,
12  Commissioner of Social Security,
13           Defendant.
14

15      BEFORE THE COURT are cross-Motions for Summary Judgment.  ECF
16  No. 16, 17.  Attorney Joseph M. Linehan represents Kris T. Knight (Plaintiff);
17  Special Assistant United States Attorney Leisa A. Wolf represents the
18  Commissioner of Social Security (Defendant).  The parties have consented to
19  proceed before a magistrate judge.  ECF No. 15.  After reviewing the
20  administrative record and briefs filed by the parties, the Court **GRANTS**
21  Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for
22  Summary Judgment.

23                          **JURISDICTION**

24      Plaintiff filed applications for Supplemental Security Income (SSI) and
25  Disability Insurance Benefits (DIB) on December 28, 2011, alleging disability
26  since October 1, 2008, due to glaucoma, an aneurysm affecting his motor skills,
27  arthritis in his feet, and an undiagnosed blood condition.  Tr. 219, 245, 262.   The
28  applications were denied initially and upon reconsideration.  Tr. 141-149, 152-165.

ORDER GRANTING DEFENDANT'S MOTION . . . . - 1

Administrative Law Judge (ALJ) Marie Palachuk held a hearing on October 3, 2013, at which Plaintiff, represented by counsel, medical expert, Minh Vu, M.D., medical expert, Margaret Moore, Ph.D., and vocational expert, Jinnie Lawson, M.ED, CRC, CCM, MSCC, testified.  Tr. 46-84.  The ALJ issued an unfavorable decision on November 8, 2013.  Tr. 19-39.  The Appeals Council denied review on February 12, 2015.  Tr. 1-6.  The ALJ's November 8, 2013, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on April 6, 2015.  ECF No. 1, 3.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was forty-six years old at the alleged date of onset.  Tr. 219.  Plaintiff completed the twelfth grade in 1980.  Tr. 246.  He worked in retail sales of heating and air conditioning equipment and retail sales of recreation and sporting goods.  Tr. 78-79, 246.  Plaintiff reported that while he stopped working on October 25, 2011, because of his conditions, his conditions had caused him to make changes in his work activity as early as October 1, 2008.  Tr. 245.

On January 2, 2008, Plaintiff was admitted to Harborview Medical Center following a tonic clonic seizure resulting from alcohol withdrawal.  Tr. 314-315.  On January 5, 2008, Plaintiff left Harborview Medical Center against medical advice.  Tr. 315-316.  Later on January 5, 2008, Plaintiff was admitted to Virginia Mason Medical Center after falling outside the facility while walking home.  Tr. 305.  He was treated for alcohol withdrawal and released.  Tr. 308.

On November 5, 2010, Deborah Byington, MA, MHP, CDPT, completed a DSHS Psychological Evaluation form while Plaintiff was incarcerated in Kent Municipal jail for a probation violation related to a driving under the influence

(DUI).  Tr. 344-348.  Ms. Byington reviewed records from DSHS making reference to a Neurologic disorder and an aneurysm in 2008.  Tr. 344.  Ms. Byington opined that Plaintiff had severe[1] limitations in five of the cognitive and social factors and marked[2] limitations in three of the cognitive and social factors. Tr. 346-347.

On November 30, 2011, Deborah Brown, Ph.D., completed a DSHS Psychological Evaluation form.  Tr. 359-361.  During the evaluation, Plaintiff reported he had a brain aneurysm rupture resulting in a five-day stay at Harborview Medical Center and since that time he had experienced cognitive deficits, dizziness, and depression.  Tr. 359.  Dr. Brown diagnosed Plaintiff with a cognitive disorder, anxiety, and major depression.  Tr. 359.  Dr. Brown administered a Trails Making Test, in which Plaintiff scored 71 seconds on Trails A and greater than 120 seconds on Trails B indicating severe deficits.  Tr. 362.  Plaintiff scored a seven out of fifteen on the Rey Malingering test.  *Id*.  Dr. Brown noted that "[i]ndividuals with mild mental retardation can generally remember 9.  It is thought however that with Mr. Knights' [] diagnosis of glaucoma, may have interfered and that he is not malingering."  *Id*.

On October 11, 2012, Dr. Brown again completed a DSHS Psychological Evaluation form.  Dr. Brown indicated that she reviewed her 2011 evaluation of Plaintiff.  Tr. 403.  Dr. Brown completed a clinical interview and Trails Making Test.  Tr. 403, 408.  Plaintiff completed Trails A in five seconds, which is the moderately impaired range and Trails B in 91 seconds, which is in the mildly impaired range.  Tr. 408.  Dr. Brown opined that Plaintiff's impairment had a

---

[1]Severe is defined as the "inability to perform one or more basic work-related activities."  Tr. 346.

[2]Marked is defined as a "very significant interference."  Tr. 346.

ORDER GRANTING DEFENDANT'S MOTION . . . - 3

marked[3] effect on six of his basic work activities and a moderate[4] effect on the remaining seven basic work activities.  Tr. 405.

On October 1, 2013, Dr. Brown completed a third DSHS Psychological Evaluation form.  Tr. 409-412.  Dr. Brown reviewed her 2011 and 2012 evaluations.  Tr. 409.  Again, Dr. Brown completed a clinical evaluation and a Trails Making Test.  Tr. 409, 414.  Plaintiff completed the Trails A in 73 seconds and the Trails B in 125 seconds.  Tr. 414.

At the hearing, Plaintiff testified that he was told at Harbor View that he had suffered an aneurysm and that he was not drinking at the time of the aneurysm.  Tr. 69.  He further testified that he stopped drinking alcohol in excess three years ago, but that he would "have a beer every now and then, but not a whole bottle of Vodka.  I've never drinken [sic] a whole bottle of Vodka."  Tr. 70.  He testified that he was not working now due to his concentration, "I can't seem to grasp you know things that would normally again be like second nature."  *Id*.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put

---

[3]Marked is defined as "a very significant limitation on the ability to perform one or more basic work activity."  Tr. 405.

[4]Moderate is defined as "there are significant limits on the ability to perform one or more basic work activity."  Tr. 405.

ORDER GRANTING DEFENDANT'S MOTION . . . - 4

1    another way, substantial evidence is such relevant evidence as a reasonable mind

2    might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402

3    U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational

4    interpretation, the court may not substitute its judgment for that of the ALJ.

5    *Tackett*, 180 F.3d at 1097.  Nevertheless, a decision supported by substantial

6    evidence will be set aside if the proper legal standards were not applied in

7    weighing the evidence and making the decision.  *Brawner v. Secretary of Health*

8    *and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence

9    supports the administrative findings, or if conflicting evidence supports a finding

10   of either disability or non-disability, the ALJ's determination is conclusive.

11   *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### SEQUENTIAL EVALUATION PROCESS

12

13         The Commissioner has established a five-step sequential evaluation process

14   for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a),

15   416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one

16   through four, the burden of proof rests upon the claimant to establish a prima facie

17   case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-1099.  This

18   burden is met once a claimant establishes that physical or mental impairments

19   prevent him from engaging in his previous occupations.  20 C.F.R. §§

20   404.1520(a)(4), 416.920(a)(4).  If a claimants cannot do his past relevant work, the

21   ALJ proceeds to step five, and the burden shifts to the Commissioner to show that

22   (1) the claimant can make an adjustment to other work, and (2) specific jobs exist

23   in the national economy which the claimant can perform.  *Batson v. Comm'r of*

24   *Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004).  If the claimant cannot make

25   an adjustment to other work in the national economy, a finding of "disabled" is

26   made.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### ADMINISTRATIVE DECISION

27

28         On November 8, 2013, the ALJ issued a decision finding Plaintiff was not

disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 1, 2008, the alleged date of onset.  Tr. 21.

At step two, the ALJ determined Plaintiff had the following severe impairments:  abnormal liver function tests without evidence of cirrhosis; numbness in the bilateral feet; and alcoholism.  Tr. 21-28.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 28-29.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of light work, "except the claimant is limited to frequent postural activities with the exception of no climbing of ladders, ropes or scaffolds (due to drinking); frequent fingering bilaterally; and the avoidance of all exposure to hazards such as moving machinery and unprotected heights (due to drinking)."  Tr. 29.  The ALJ concluded that Plaintiff was capable of performing his past relevant work as a sales representative of building and equipment supplies and sales representative of recreational and sports equipment.  Tr. 36.

In the alternative to a step four determination that Plaintiff was capable of performing his past relevant work, the ALJ found that, considering Plaintiff's age, education, work experience and residual functional capacity, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, through the application of the Medical Vocational Guidelines.  Tr. 37.

The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from October 1, 2008, the alleged date of onset, through the date of the ALJ's decision, November 8, 2013.  Tr. 38.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal

standards.  Plaintiff contends the ALJ erred by (1) failing to find Plaintiff's mental health impairments severe at step two, and  (2) failing to accord proper weight to the opinion of Debra Brown, Ph.D.

## DISCUSSION

**A.    Step Two**

The ALJ determined that Plaintiff's alleged mental health impairments, other than alcoholism, were not medically determinable impairments because the diagnoses were based on assessments from Dr. Brown and Ms. Byington.  The ALJ gave no weight to these assessments.  Specifically, the ALJ noted that the assessments completed by Dr. Brown and Ms. Byington relied heavily on Plaintiff's inaccurately reported past medical history, inconsistently reported substance abuse issues, and inconsistent effort on testing.  Tr. 28.

At step two, the ALJ determines whether a claimant has a severe impairment.  20 C.F.R. §§ 404.1520, 416.920.  An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only [a claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908.  The code defines psychiatric signs as "medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development of perception.  They must also be shown by observable facts that can be medically described and evaluated."  20 C.F.R. §§ 404.1528(b), 416.928(b).  Laboratory findings are defined as "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." 20 C.F.R. §§ 404.1528(c), 416.928(c).  Social Security Regulations provide that:

[U]nder  no  circumstances  may  the  existence  of  an  impairment  be

established on the basis of symptoms alone. Thus, regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings.

S.S.R. 96-04p.

First, the ALJ determined that the assessments by Dr. Brown and Ms. Byington were not substantial evidence because Plaintiff inaccurately reported his medical history to providers throughout the record. Tr. 28. Plaintiff told each provider that he had suffered an aneurysm resulting in his stay at Harborview Medical Center, including Dr. Brown and Dr. Byington. Tr. 339, 344, 351, 359, 396, 403, 409. While at Harborview, there is no evidence that Plaintiff suffered an aneurysm. On January 2, 2015, Plaintiff suffered an alcohol withdrawal seizure and was admitted to Harborview Medical Center. Tr. 314-315. He then left on January 5, 2008, against medical advice. Tr. 315. Later on January 5, 2008, he was treated for withdrawal symptoms at Virginia Mason Medical Center, with John Lacombra, M.D., stating "I see no evidence of new neurologic emergency or stroke." Tr. 308. Therefore, there is no evidence to support the conclusion that Plaintiff suffered from an aneurysm resulting in any cognitive impairment besides Plaintiff's testimony.

Dr. Brown and Ms. Byington relied upon Plaintiff's self-reported aneurysm in forming their diagnoses: Dr. Brown wrote that "[h]e reported that in 2008 he experienced a 'small brain aneurism' that 'ruptured.'" Tr. 360. There is no evidence that Dr. Brown reviewed the records from Harborview Medical Center. Tr. 359-364. Based on Plaintiff's reports, her clinical interview, and psychological testing, Dr. Brown diagnosed a cognitive disorder being present since January of 2008. Tr. 359. Likewise, Plaintiff told Ms. Byington that he had suffered an aneurysm. Tr. 344. Ms. Byington then completed an evaluation and reviewed

ORDER GRANTING DEFENDANT'S MOTION . . . - 8

previous records from DSHS, which included the diagnosis an aneurysm in 2008. *Id.* Based on this information, Ms. Byington diagnosed a Neurologic disorder. Tr. 346. However, the only DSHS records prior to Dr. Byington's evaluation are from Dr. Pratt and include Plaintiff's statements that he suffered an aneurysm, but there is no evidence that Dr. Pratt actually reviewed the Harborview records. Tr. 338-341. As such, the ALJ's conclusion that Plaintiff reported his medical history to the evaluators inaccurately and those evaluators relied on this reports is supported by substantial evidence and is sufficient to find these reports unreliable.

Additionally, Plaintiff inconsistently reported his sobriety dates during psychological evaluations. First, when Plaintiff was initially treated in January of 2008, he reported drinking a bottle of vodka a day. Tr. 305. On March 3, 2010, Plaintiff told Dr. Pratt that he was no longer drinking alcohol. Tr. 341. When he was evaluated by Ms. Byington on November 5, 2010, he reported on-going daily hard liquor and beer use and was incarcerated at the time of the evaluation following a probation violation for driving under the influence. Tr. 346, 348. During the November 30, 2011, evaluation by Dr. Brown, he denied any use for the last eighteen months. Tr. 360. During an evaluation by Johnathan R. Steinhart, M.D., on January 17, 2012, he reported that he drinks a very small amount of alcohol on very rare occasions. Tr. 382. During the October 11, 2012, evaluation by Dr. Brown, he reported no use for two or three years. Tr. 404. During the October 1, 2013, evaluation by Dr. Brown, he reported no use for two or three years. Tr. 410. Plaintiff testified at the October 3, 2013, hearing that he was not drinking at the time of the aneurysm. Tr. 69. He further testified that he stopped drinking alcohol in excess three years ago and that he would have a beer every now and then, but he never had a whole bottle of vodka. Tr. 70. Plaintiff inconsistently reported his alcohol use throughout the record, and Dr. Brown and Ms. Byington relied upon these reports in making their diagnoses: In her October 3, 2012, evaluation, Dr. Brown concluded that Plaintiff's current impairments were not

ORDER GRANTING DEFENDANT'S MOTION . . . - 9

primarily the result of drug use with in the past sixty days after Plaintiff informed her he had not drank alcohol in the past two to three years, but Plaintiff testified at trial that he had drank during that time and Ms. Byington's evaluation showed a DUI occurred within two years of Dr. Brown's evaluation.  Ms. Byington states that Plaintiff reported an on-going daily hard liquor and beer use, yet stated that symptoms persisted with four months of sobriety.  Tr. 346.  This conclusion was based on Plaintiff's reports regarding his substance abuse because there is no evidence that Ms. Byington saw him except while incarcerated.  Therefore, the ALJ's determination that the evaluations by Dr. Brown and Ms. Byington were unreliable due to their reliance on Plaintiff's inconsistent statements regarding his sobriety is supported by substantial evidence.

Finally, Plaintiff also showed inconsistent effort on testing.  On November 30, 2011, Plaintiff scored a seven out of fifteen on the Rey Malingering test.  Tr. 362.  Dr. Brown noted that "[i]ndividuals with mild mental retardation can generally remember 9.  It is thought however that with Mr. Knights' [] diagnosis of glaucoma, may have interfered and that he is not malingering."  *Id*.  There is no evidence of glaucoma being diagnosed in the record expect for Plaintiff's reports.  Dr. Moore testified that this should have been a red flag to Dr. Brown and was clear evidence of malingering.  Tr. 58.  The Rey Malingering test was given on October 3, 2012, and Plaintiff scored a 15/15, which is the normal range.  Tr. 408.  The test was administered a third time on October 1, 2013, and Plaintiff scored 12/15, which is also in the normal range.  Tr. 414.  There is no evidence that Plaintiff received treatment for his glaucoma explaining the higher scores in 2012 and 2013.  Additionally, the three Trails Making Tests performed by Dr. Brown over the course of three years were inconsistent:  2011 Trails A was 71 seconds and Trails B was greater than 120 seconds, Tr. 362; 2012 Trails A was 5 seconds and Trails B was 91 seconds, Tr. 408; 2013 Trail A was 73 seconds and Trails B was 125 seconds.  Tr. 414.  Dr. Moore testified that this is a test that is

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

"exceedingly vulnerable to someone who might want to appear other than they [are]." Tr. 58. Additionally, Dr. Moore testified that on the 2011 WAIS-IV testing, Plaintiff scored the average 9 on the digit span or the working memory test, but then scored very low on the Wechsler Memory Test, showing, again, inconsistent testing, stating "That doesn't work. It doesn't work that way with someone who is giving genuine effort and trying to portray themselves accurately." Tr. 58-59, 363-364. The ALJ gave Dr. Moore's opinion and testimony great weight and Plaintiff failed to challenge this determination. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief). As such, the ALJ's finding that the objective testing was unreliable due to Plaintiff's potential malingering and Dr. Brown reliance upon this testing rendered her evaluation unreliable is supported by substantial evidence.

Plaintiff asserts that the evaluations completed by Ms. Byington and Dr. Brown supported a finding of a severe mental health impairment at step two. ECF No. 16 at 10-11. But the ALJ gave these opinions "no significant weight." Tr. 34. Plaintiff does not challenge the weight given to Ms. Byington's evaluations, therefore the issue is waived. *See Carmickle*, 533 F.3d at 1161 n.2 (the court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief). However, Plaintiff did challenge the weight given to Dr. Brown's evaluations. ECF No. 16 at 12-15. As discussed below, the ALJ provided legally sufficient reasons to support the rejection of Dr. Brown's opinion.

Furthermore, Plaintiff asserts that he has the medically determinable impairments of cognitive disorder, anxiety disorder, major depression, and borderline intellectual functioning and that these impairments are supported by the psychological testing performed by Dr. Brown. ECF No. 16 at 12. Dr. Moore

ORDER GRANTING DEFENDANT'S MOTION . . . - 11

testified that these tests were inconsistent, showing that Plaintiff was malingering during these tests. Tr. 58-59. The ALJ gave Dr. Moore's opinion "great weight." Tr. 34. Plaintiff does not challenge this, therefore the issue is waived. *See Carmickle*, 533 F.3d at 1161 n.2. As such, the ALJ's conclusion that these tests were strongly suggestive of malingering and not reliable is supported by substantial evidence.

In conclusion, the ALJ's step two finding that Plaintiff did not suffer from a mental health impairment besides the alcoholism is supported by substantial evidence.

**B.    Evaluation of Medical Evidence**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by Debra Brown, Ph.D. ECF No. 16 at 12-15. In the decision, the ALJ gave no significant weight to any of the DSHS evaluations, including Dr. Brown's evaluations, because (1) the evaluations were largely based on Plaintiff's self-reported symptoms and complaints, (2) the evaluations were completed for the purpose of continuing Plaintiff's state assistance giving him incentive to overstate his symptoms and complaints, (3) the evaluators usually do not have a treating relationship with a claimant, and (4) the opinions are based on check the box forms that contain few objective findings to support the degree of limitations. Tr. 34-35. The ALJ specifically gave no significant weight to the three opinions of Dr. Brown because (1) they were predicated on the notion that Plaintiff suffered a brain aneurysm, (2) Dr. Brown did not review the treatment records from 2011 and 2012 documenting Plaintiff's inconsistent statements regarding his alcohol abuse, (3) Dr. Brown failed to address the inconsistencies in Plaintiff's test scores, and (4) Dr. Brown's opinions were questioned by Dr. Moore. Tr. 36.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant;

ORDER GRANTING DEFENDANT'S MOTION . . . - 12

and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

First, the ALJ rejected all the opinions resulting from DSHS evaluations because (1) the evaluations were largely based on Plaintiff's self-reported symptoms and complaints, (2) the evaluations were completed for continuing Plaintiff's state assistance giving him incentive to overstate his symptoms and complaints, (3) the evaluators usually do not have a treating relationship with a claimant, and (4) the opinions are based on check the box forms that contain few objective findings to support the degree of limitations. Tr. 34-35. All three of Dr. Brown's opinions were DSHS evaluations. Tr. 359-362, 403-414.

The ALJ's determination that Dr. Brown's evaluations were largely based on Plaintiff's self-reported symptoms and complaints is a specific and legitimate reason to reject Dr. Brown's opinions. The Ninth Circuit has held that a doctor's opinion may be discounted if it relies on a claimant's unreliable self-report. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the ALJ found Plaintiff to be less than fully credible. Tr. 30-32. Plaintiff does not challenge this determination, therefore, Plaintiff's credibility is not an issue before the Court. ECF No. 16. *See*

ORDER GRANTING DEFENDANT'S MOTION . . . - 13

*Carmickle*, 533 F.3d at 1161 n.2 (the court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief). Dr. Brown does rely on Plaintiff's self-report throughout her opinions. Plaintiff reported a history of a brain aneurysm and glaucoma. Tr. 359-360. Neither of these conditions are diagnosed in the record. Yet, Dr. Brown relied on these diagnoses when forming her opinion. For example, when Plaintiff scored a seven on the Rey Malingering test, instead of concluding that Plaintiff was malingering, Dr. Brown concluded that Plaintiff's glaucoma was the result of the abnormal score. Tr. 362. Thereafter, she never questioned Plaintiff's credibility. Additionally, Dr. Brown diagnosed a cognitive disorder being present since January of 2008, but Dr. Brown did not have any medical records from 2008, therefore, the ALJ's determination that her diagnosis was based on Plaintiff's self-reports is supported by the record and a specific and legitimate reason to reject Dr. Brown's opinion. Tr. 359.

The ALJ's determination that because Dr. Brown's evaluations were done for the purpose of continuing Plaintiff's state assistance is not a specific and legitimate reason to support a rejection of Dr. Brown's opinions. The Ninth Circuit has held "in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." *Reddick v. Chater,* 157 F.3d 715, 726 (9th Cir. 1998). In *Reddick* it is clear that the credibility of the medical report must be in question, not the credibility of the claimant. *See also Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (the opinion was solicited from the provider by the attorney and was "worded ambiguously in an apparent attempt to assist Saelee in obtaining social security benefits"). Here, there is no evidence that Dr. Brown was less than fully credible in her opinion. Instead, her opinion was based on the statements, presentation, and testing of a person who has been determined to be less than fully credible and potentially attempting to misrepresenting his

ORDER GRANTING DEFENDANT'S MOTION . . . - 14

impairments and symptoms in order to gain public benefits. As such, this is not a specific and legitimate reason to reject Dr. Brown's opinion. However, this is a harmless error as the ALJ provided other legally sufficient reasons to reject Dr. Brown's opinion. *See Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

The ALJ's determination that Dr. Brown did not have a treating relationship with a claimant is not a specific and legitimate reason to reject her opinion. Plaintiff asserts that Dr. Brown is a treating psychologist. EFC No. 16 at 12-13. A treating source is defined by 20 C.F.R. §§ 404.1502, 416.902:

> Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

Therefore, the ALJ's determination that Dr. Brown is a nontreating source is in accord with the above provisions.

The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn*, 495 F.3d at 631. While Dr. Brown's status as a nontreating, but examining source speaks to the weight

ORDER GRANTING DEFENDANT'S MOTION . . . - 15

afforded her opinion, it is not a legally sufficient reason to reject her opinion. An ALJ must provide specific and legitimate reasons to reject the opinion of a contradicted examining physician. *Lester*, 81 F.3d at 831. Again, any error resulting from this determination is harmless, as the ALJ provided other legally sufficient reasons to find Plaintiff less than fully credible. *See Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

As for the ALJ's determination that the opinion was based on check the box form, the Plaintiff failed to challenge this finding in his briefing and any challenge is considered waived. The court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief. *See Carmickle*, 533 F.3d at 1161 n.2. The Ninth Circuit explained the necessity for providing specific argument:

> The art of advocacy is not one of mystery. Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court. Particularly on appeal, we have held firm against considering arguments that are not briefed. But the term "brief" in the appellate context does not mean opaque nor is it an exercise in issue spotting. However much we may importune lawyers to be brief and to get to the point, we have never suggested that they skip the substance of their argument in order to do so. It is no accident that the Federal Rules of Appellate Procedure require the opening brief to contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9)(A). We require contentions to be accompanied by reasons.

*Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003). Moreover, the Ninth Circuit has repeatedly admonished that the court will not "manufacture arguments for an appellant" and, therefore, will not consider claims that were not actually argued in appellant's opening brief. *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994). Because Plaintiff failed to

provide adequate briefing, the court declines to consider this issue.

Second, the ALJ specifically rejected Dr. Brown's three opinions because (1) they were predicated on the notion that Plaintiff suffered a brain aneurysm, (2) Dr. Brown did not review the treatment records from 2011 and 2012 documenting Plaintiff's inconsistent statements regarding his alcohol abuse, (3) Dr. Brown failed to address the inconsistencies in Plaintiff's test scores, and (4) Dr. Brown's opinions were questioned by Dr. Moore.  Tr. 36.

The ALJ's determination that Dr. Brown's opinions were predicated on the notion that Plaintiff suffered a brain aneurysm is a specific and legitimate reason to reject the opinion.  As discussed in detail above, there is no evidence of Plaintiff suffering a brain aneurysm and Dr. Brown clearly relied on Plaintiff's report that he had throughout her evaluations.  Thus, this is a specific and legitimate reason to reject Dr. Brown's opinions.

As for the ALJ's determination that Dr. Brown did not review the treatment records from 2011 and 2012 documenting Plaintiff's inconsistent statements regarding his alcohol abuse and Dr. Brown failed to address the inconsistencies in Plaintiff's test scores, these were not challenged by Plaintiff in his briefing. Therefore, any challenge that these are not specific and legitimate reasons are waived.  *See Carmickle*, 533 F.3d at 1161 n.2 (9th Cir. 2008).

The ALJ's determination that Dr. Moore's questioning of Dr. Brown's opinion is a specific and legitimates reason to reject the opinion.  Where there is other evidence to support the rejection of an examining physician, the testimony of a nonexamining medical advisor can be used to reject the examining physician's opinion.  *See Lester*, 81 F.3d at 831.  As discussed above, the ALJ cited multiple legitimate reasons to reject Dr. Brown's opinions.  Therefore, Dr. Moore's testimony in combination with the other legally sufficient reasons provided by the ALJ supports the rejection of Dr. Brown's opinions.

In conclusion, the ALJ provided specific and legitimate reasons for rejecting

Dr. Brown's opinions.

### CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED.**

DATED April 26, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 18